UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:07-CV-56-R

MARTIN MARIETTA MATERIALS, INC.                                                PLAINTIFF

v.

BANK OF OKLAHOMA, as Trustee of the
Jones Family Trust and the Eula Kathleen
Jones trust,                                                                                    DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff Martin Marietta Materials, Inc.'s Complaint for Vacatur or Modification of Arbitration Award (Docket #1). Defendant Bank of Oklahoma ("BOK") filed a response and, in the alternative, a Motion to Confirm Arbitration Award (Docket #3). Martin Marietta filed a memorandum in support (Docket #15). BOK filed a reply in opposition (Docket #16). Martin Marietta filed a reply in support (Docket #21). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's Complaint for Vacatur or Modification of Arbitration Award is DENIED and Defendant's Motion to Confirm the Arbitration Award is GRANTED.

**BACKGROUND**

BOK is the current trustee of the Jones Family Trust and the Eula Kathleen Jones Trust (the "Trusts"). On February 29, 1988, the Trusts and the Three Rivers Rock Company entered into a Lease Amendment (the "Agreement"). BOK acts on behalf of the Trusts and manages properties held by the Trusts as Lessor under the Agreement. Martin Marietta is the successor in interest of the Tree Rivers Rock Company, and became Lessee of the properties under the

Agreement on January 3, 1995. Both BOK and Martin Marietta are bound by the terms of the Agreement.

Under the Agreement, Martin Marietta pays the Trusts certain yearly royalty payments for limestone removed, marketed, shipped, sold and/or donated from the Three Rivers Quarry. At the time the Agreement was executed, the Lessee was obligated to pay the Lessor: (1) a Base Rate Royalty ("BRR") of $0.125 per ton of limestone for the first 3 million tons of limestone removed from the quarry per year; and (2) a Production Incentive Royalty ("PIR") of $0.10 per ton of limestone beyond the first 3 million tons per year. The BRR was to be adjusted yearly to reflect changes in the Consumer Price index, though the adjustment could never exceed an increase or decrease of 2% per year. The PIR was not adjusted annually.

The Agreement called for the Lessor and Lessee to periodically renegotiate the BRR and PIR, commencing fifteen years after its execution. The parties were to negotiate a proper and equitable increase or decrease in the BRR and PIR according to the then prevailing market conditions. The BRR was limited to an increase or decrease of 20% following the negotiations. Additionally, the minimum BRR was set at $0.125 per ton, and the minimum PIR was set at $0.10 per ton.

Martin Marietta and BOK negotiated until August 28, 2006. Under the agreement, if the parties fail to mutually agree on an adjusted BRR or PIR, the parties agreed to resolve any outstanding issues by initiating arbitration. BOK initiated arbitration, and specified the issue to be decided as a proper and equitable increase of the BRR and PIR.

The Agreement authorized the arbitrator broad discretion in establishing the procedure to be followed. On January 5, 2007, the arbitrator ordered the parties to file a brief Position

Statement outlining the issues to be decided by the arbitrator, and the parties' positions on those issues. On January 17, 2007, the parties exchanged position statements. Both parties stated that they would present evidence that a BRR of $0.1992 per ton of limestone removed was proper and equitable. Martin Marietta intended to present evidence that a proper and equitable PIR for the limestone removed between 3 million tons and 5.5 million tons was $0.16436, and that a proper and equitable PIR for the limestone removed beyond 5.5 million tons per year was $0.15436. BOK stated that it believed the evidence will demonstrate that a proper and equitable PIR was $0.52848 per ton removed beyond 3 million tons.

On January 25, 2007, the arbitrator told both parties that their respective positions were too far apart on the PIR. The arbitrator suggested that since he could not compromise the two positions under the Agreement, the parties should reevaluate their respective positions.

The arbitration hearing was held from January 29, 2007, to February 1, 2007. The Agreement required the parties to submit a post-hearing brief setting forth their proposed findings of fact and conclusion. The brief was required to be submitted twenty days after the parties received the hearing transcript. The arbitrator was to render his award fifteen days after receiving the brief.

The parties received the transcript on February 15, 2007. On February 17, 2007, BOK informed Martin Marietta and the arbitrator that based on the evidence presented by both parties at the hearing, a proper and equitable PIR was $0.417 per ton of limestone for production greater than 3 million tons per year.

The arbitrator allowed BOK to reevaluate its position and determined that Martin Marietta was not prejudiced by the decision. On March, 8, 2007, both parties submitted post-

3

hearing briefs. On March 23, 2007, the arbitrator issued "Findings of Fact, Conclusions of Law, and Award" in favor of BOK.

Martin Marietta argues that the award should be vacated or modified because the Arbitrator disregarded the plain language of the Agreement in rendering his decision, and that the arbitrators decision to allow BOK to reevaluate its position denied Martin Marietta a fundamentally fair hearing. BOK in turn argues that the Court should confirm the award.

## STANDARD

When parties agree to arbitration under the Federal Arbitration Act, the Court must confirm the award unless the arbitration decision "is vacated, modified, or corrected." 9 U.S.C. § 9. "The Federal Arbitration Act presumes that arbitration awards will be confirmed." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000). *See also Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir. 1998). "When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer-Stevens Co. v. United Steelworkers,* 913 F.2d 1166, 1169 (6th Cir. 1990).

The Court reviews arbitration awards only to determine whether the parties have received a fundamentally fair hearing. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002). The party seeking to alter or vacate an arbitrator's award bears the burden of proof to show cause for alteration or vacation. *Dawahare*, 210 F.3d 669-70; *Andersons*, 166 F.3d at 328.

> A court may vacate an arbitration award in the following situations: (1) where the award was procured by fraud, (2) where the arbitrators were evidently partial or corrupt, (3) where the arbitrators misbehaved so that a party's rights were prejudiced, or (4) where the arbitrators exceeded their powers or executed them so that a final, definite award was not made.
>
> *Dawahare*, 210 F.3d at 669.

"A court's power to vacate an arbitration award is almost exclusively confined to the four grounds specified in the Federal Arbitration Act." *NCR Corp. v. Sac-Co., Inc.,* 43 F3d 1076,1079 (6th Cir. 1995). An addition to the statute, an arbitration award may be overturned if the arbitrator is found to have "manifestly disregarded the law." *Dawahare*, 210 F.3d at 669-70. "[T]o find manifest disregard a court must find two things: the relevant law must be clearly defined and the arbitrator must have consciously chosen not to apply it." *Id.* at 669. Specifically, the Federal Arbitration Act provides that an award may be vacated:

> (1) Where the award was procured by corruption, fraud, or undue means.
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
> (5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.
> 9 U.S.C. § 10(a).

An award may be modified or corrected:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
> 9 U.S.C. § 11.

## DISCUSSION

**I. Vacating the arbitration decision for allowing the PIR to be greater than the BRR.**

Martin Marietta argues that the award should be set aside because under the terms of the agreement the PIR cannot be greater than the BRR. Martin Marietta cites several authorities as to why ignoring the plain language of the agreement requires the award be overturned. Under § 10(a)(4) if an arbitrator exceeded his powers the Court may vacate the award. An arbitrator would be exceeding his powers if he ignored the express provisions of the arbitration agreement. This can also be formulated as a requirement that the arbitrator's award must "draw from the essence of the agreement." *Solvay Pharmaceuticals Inc. v. Duramed Pharmaceuticals, Inc.,* 442 F.3d 471, 476 (6th Cir. 2005). An award fails to draw its essence from the agreement when:

> (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on "general considerations of fairness and equity" instead of the exact terms of the agreement.

*Id.* In this case, Martin Marietta is arguing that the arbitrator's decision conflicts with the express terms of the agreement.

Martin Marietta argues that the arbitrator ignored the plain and unambiguous contract language. Specifically, Martin Marietta states that the arbitrator disregarded the requirement in the lease agreement that the PIR must be an incentive. Martin Marietta then concluded that a "production incentive royalty" can only be an "incentive" if it is lower than the base rate.

However, the Agreement is silent as to these requirements. Martin Marietta came to its conclusion that the PIR cannot be higher than the BRR based on the use of the word "incentive" to describe the amount of the royalty for the limestone removed in excess of 3 million tons. Martin Marietta argued to the arbitrator that the dictionary defines incentive as "serving to induce or motivate: an incentive bonus for high productivity." The lower royalty payment for

increased production served as an incentive for Martin Marietta to increase production. Martin Marietta believes that allowing a PIR greater than the BRR serves as a disincentive, and therefore violates the lease.

The arbitrator examined this argument in his conclusions of law. There is nothing in the lease specifically prohibiting the PIR from being greater than the BRR. The arbitrator found that to add such a condition would be re-writing the agreement. The parties could have explicitly placed a cap on the PIR if they had so desired. This is evidenced by the limitations placed on the BRR, limiting it to a 2% yearly increase or decrease, and 20% increase or decrease during the renegotiations. Additionally, the lease must be construed against Martin Marietta, as predecessor in interest to the drafter of the Lease Amendment.

"[A]s long as the arbitrator is even arguably construing or applying the contract, . . . that a court is convinced he committed a serious error does not suffice to overturn his decision." *Solvay Pharmaceuticals,* 442 F.2d at 466. Therefore, even if the Court believed that the arbitrator committed a serious legal error, the Court must refrain from vacating the award. *Id.* In this case, the arbitrator supplied a rationale for his decision that the PIR could be greater than the BRR. The supplied rationale is sufficient to satisfy the requirement that the arbitrator is arguably applying the contract. The Court disagrees with Martin Marietta that the Agreement's use of the word "incentive" is an express condition that the PIR be less than the BRR, leaving it impossible for the arbitrator to arguably construe the Agreement otherwise.

A more rigorous review of an arbitrator's decision is not allowed under Supreme Court and Sixth Circuit precedent. "[I]t is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed." *Beacon Journal Pub. Co. v. Akron Newspaper*

7

*Guild, Local Number 7*, 114 F.3d 596, 599 (6th Cir. 1997).

## II. Vacating the award for effecting a compromise

Martin Marietta also argues that the arbitrator violated § 10(a)(4) by ignoring the language of the Agreement that precludes the arbitrator from effecting a compromise. The Agreement requires that "the Arbitrator must select the proposal of the party which he believes most accurately represents the correct finding(s) of fact, based upon the Lease and the evidence presented in such proceeding, and the Arbitrator may not effect a compromise." Martin Marietta concludes that in allowing BOK to change its proposal after the hearing, the arbitrator selected a proposal that was somewhere in between the pre-hearing proposals of BOK and Martin Marietta.

The arbitrator did select a proposal of one of the parties. It was merely a proposed after the hearing. There is nothing specifically in the agreement that expressly prohibits the proposal from being submitted after the hearing.

Martin Marietta argues that under "baseball style arbitration" (also known as final offer arbitration) a party submits an offer at its own peril. In arriving at this conclusion, it cites various law review articles concerning baseball style arbitration. However, it was not the arbitrator's job to properly apply baseball style arbitration. His job was to properly apply the Agreement. The agreement states simply that the arbitrator is not to effect a compromise. The arbitrator could conclude that this requires him to examine the final proposals of each party, and choose one of them.

All that is necessary for the award to be upheld is that the arbitrator was arguably construing the contract. Because the arbitrator did not compromise between the two final proposals, he was arguably not effecting a compromise under the Agreement. Therefore, under

8

the narrow standard of review the Court must use when reviewing an arbitrator's decision, the Court cannot vacate the award.

### III. Fundamental fairness

Martin Marietta argues that the arbitration award should be overturned because the it was denied a fundamentally fair hearing. "Fundamental fairness requires only notice, an opportunity to present relevant and material evidence and arguments to the arbitrators, and an absence of bias on the part of the arbitrators." *Nationwide Mutual Ins. Co. v. Home Ins. Co.,* 278 F.3d 621, 625 (6th Cir. 2002). Martin Marietta states that it was denied the opportunity to present any evidence related to a PIR of $0.417 per ton.

A party does not have an absolute right to present evidence. *Id.* Instead, fairness requires an opportunity to present relevant and material evidence. *Id.* It is unclear what evidence Martin Marietta would have offered to attack the reasonableness of BOK's proposal of $0.417 per ton, that was not already brought in to attack BOK's proposal of $0.52848. This is important, because Martin Marietta bears the burden of proof to show cause why the Court should vacate the arbitrator's award.

In its reply brief, Martin Marietta argues that BOK changed its proposal to come within twelve cents of what BOK presented at the hearing as a reasonable rate in view of the then prevailing market conditions. However, whether BOK's proposal was $0.417 or $0.52848, the same evidence would be used to attack BOK's expert's opinion that a reasonable rate was approximately $0.30 per ton.

Martin Marietta was given the opportunity to present evidence that its proposed PIR ($0.16436 per ton for the 2.5 million tons beyond the first 3 million tons, and a PIR of $0.15436

9

per ton any amount removed beyond the first 5.5 million tons) was correct. Martin Marietta was also given the opportunity to present evidence of "the then prevailing market conditions."

Because Martin Marietta received notice that BOK was proposing a PIR of $0.417 per ton, Martin Marietta had the opportunity to present counter-arguments concerning a PIR of $0.417 with the already submitted evidence. Martin Marietta also had the opportunity to revise its own proposal in light of the evidence offered at the hearing. Additionally, Martin Marietta was aware that BOK specifically reserved the right to reevaluate its position as set out in the pre-hearing position statement should additional evidence be produced, and Martin Marietta never objected.

"Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedure is merely whether a party to arbitration has been denied a fundamentally fair hearing." *Id.* In this case, the Court finds that Martin Marietta was not denied a fundamentally fair hearing.[1]

## IV. Modification of award

Martin Marietta argues that the Court should modify the award under 9 U.S.C. § 11(b). Under this section, a court may modify or correct an award if "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." Martin Marietta contends that because the proposal accepted by the arbitrator was proposed after the hearing, the proposal was not a matter submitted to the

---

[1]The fundamental fairness analysis also applies to Martin Marietta's argument that the agreed procedure did not allow "revised proposals." In so far as the argument is based on procedure, and not on §10(a) or a manifest disregard of the law, Martin Marietta bears the burden of proving (1) lack of notice, (2) lack of an opportunity to present relevant and material evidence and arguments to the arbitrator, or (3) bias on the part of the arbitrator.

10

arbitrator.

The Agreement states that if the Lessor and Lessee fail to agree on a BRR or PIR all outstanding issues with respect to adjustment of the BRR or PIR shall be decided by arbitration. Martin Marietta's pre-hearing position statement gives as an issue to be decided "the amount of the Production Incentive Royalty." Therefore, in choosing BOK's proposal of $0.417 per ton as the Production Incentive Royalty, the arbitrator decided a matter that was properly before him.

## CONCLUSION

For the above reasons, Plaintiff's Motion to Vacate is DENIED. Defendant's Motion to Confirm is GRANTED.

An appropriate order shall issue.